IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SAKEENA DAUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-00378-CV-W-ODS |
| | ) | |
| NATIONAL MULTIPLE SCLEROSIS SOCIETY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is Defendant National Multiple Sclerosis Society's motion for summary judgment. Doc. #43. The Court grants the motion.

### I. BACKGROUND[1]

In January 2016, Plaintiff Sakeena Daud responded to a job advertisement seeking an "Operations Administrator" at the Defendant's Mid-America Chapter in Kansas City, Missouri. The advertisement stated "[t]he primary responsibility of this role is office administration support to ensure general operations are efficient, in compliance with Society policies, and meet state regulations. This role will provide support in the

---

[1] The facts herein are taken from the parties' summary judgment briefing and attachments thereto. Docs. #44-47. No genuine issue of material fact exists to preclude summary judgment. To the extent Plaintiff "lacks appropriate knowledge," or "neither agrees or disagrees" with a fact, she fails to properly controvert that fact, and it is deemed admitted. *See* L. R. 56.1(b) (stating "[a] party opposing a motion for summary judgment must begin its opposing suggestions by admitting or controverting each separately numbered paragraph in the movant's statement of facts…. Unless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted for purpose of summary judgment."). Furthermore, in many instances, the record to which Plaintiff cites to support a fact does not establish or pertain to the purported fact, and many purported factual statements lack any citation. Accordingly, Plaintiff fails to properly support these factual statements, and the Court cannot rely on them. *See* Fed. R. Civ. P. 56(c); L. R. 56.1(b).

functional areas of executive assistance, human resources, finance and accounting, risk management, and general office maintenance such as mail handling, data entry, and inventory management…." The advertisement generally identified the role's allocation of time as being 25% finance and accounting, 40% office and equipment management, 10% human resources, 15% support for chapter president, and 10% volunteer engagement.

After passing an initial screening, Defendant asked Plaintiff to complete a formal application, which she did. Plaintiff interviewed with Chapter President Jenna Neher, and Vice President for Community Engagement & Services Susan Engel. Plaintiff wore a hijab to the interview, but Neher and Engel did not comment on Plaintiff's hijab, religion, skin color, or race. Although Plaintiff later testified she perceived "weird vibes" or "off-putting vibes" from Neher, and thought she may not get the job, she cannot identify a specific comment or action. Senior Human Resources Director Kimberli Baltzer made a formal offer of employment, which Plaintiff accepted. Plaintiff started working as an Operations Administrator for Defendant on April 4, 2016.

Various events and circumstances led to Plaintiff's termination one year later, on April 5, 2017. Throughout her year-long employment, Plaintiff alleges she complained about Neher's treatment of her, and generally alleges the office atmosphere was discriminatory towards her. Plaintiff complained Neher and/or others talked down to her, made her feel alone and not part of a strong team, dismissed her in front of other co-workers, did not provide a supportive atmosphere, and intimidated or pressured her. Plaintiff also complained Neher improperly requested access to and control of cash and other financial records on-site, and Neher improperly requested access to personnel files held on-site. Plaintiff lodged additional complaints because she felt the organization and its employees did not appreciate her, devalued her work, and/or minimized her and her role in the organization. Plaintiff also complained about the amount of work that was assigned or fell to her in her role.

Plaintiff also found fault with her office space. When Plaintiff began working for Defendant, Neher indicated Plaintiff would be serving as a receptionist, but would also have a "home base" office in the same space occupied by Defendant's former finance staffer and where several financial and operations files were located. Plaintiff felt Neher

2

was segregating her because the office was located in a back corner, and near the restrooms.[2] Near the end of May 2016, Plaintiff voiced frustration with her office placement after a phone call was interrupted by someone using the restroom next to her office. Plaintiff conferred with Data Management Associate Kim Luger, who had been training Plaintiff, and Plaintiff relocated to an office "close by" without seeking or obtaining Neher's approval.

In November 2016, Plaintiff moved her office again without seeking approval from Neher. Although she was required to oversee the reception area, Plaintiff complained that requiring her to sit at the front desk or in a nearby office was setting her up for failure. Plaintiff argued this second move would be better because she was working on an ongoing project that required her to spread out financial records. In addition to moving her office twice without approval, Plaintiff refused to move her office in March 2017 when Defendant asked to her move closer to the reception area.

Plaintiff also complained about her role's limited involvement in recruiting and assignment of volunteers. For example, in June and July 2016, one of Plaintiff's tasks was to work with, among others, Volunteer Engagement Coordinator Leanne Mersmann to prepare for the Bike MS fundraiser. Although Plaintiff had other tasks, she expressed a desire to do more and wanted a "more hands on approach with helping recruit volunteers." Plaintiff asked Mersmann for the ability to track volunteers' progress in Defendant's system, and requested access to a database to do so. Plaintiff was told to send potential volunteers to Mersmann because Mersmann's job was to recruit and schedule volunteers. Mersmann shared a spreadsheet to enable Plaintiff to track volunteers for registration, money counting, and packets (all tasks assigned to Plaintiff), but apparently did not give Plaintiff access to a larger, comprehensive database of volunteers. Although Plaintiff stated she had "some people that would like to volunteer," the record does not indicate she forwarded any names to Mersmann at that time.

---

[2] Plaintiff states she complained of her office placement to Neher, but cites to her complaint to support this allegation. This purported fact is not properly supported. A party "cannot simply rely on assertions in the pleadings to survive a motion for summary judgment." *Krein v. DBA Corp.*, 327 F.3d 723, 726 (8th Cir. 2003).

Although the Court will more fully discuss the circumstances below, Plaintiff applied for a promotion to an "Operations Manager" position in November 2016. Plaintiff was interviewed twice, but was not selected to advance for a final interview. Plaintiff alleges her religion, race, and color played a factor in Defendant's decision not to promote her.

Several events occurred in the last two months of Plaintiff's employment. Plaintiff surreptitiously recorded two phone calls with supervisors in which she discussed her role at the organization. In one call, Plaintiff refused a directive to re-locate her office closer to the reception area. Additionally, after becoming aware of a volunteer recruitment email sent by Plaintiff without approval from Defendant's marketing team, Plaintiff was given a set of expectations regarding her continued efforts to recruit volunteers. She was directed not to perform work beyond her assigned tasks because it would overlap with work already being done by others. Plaintiff escalated her concerns about her role, and what she was being told to do, to Baltzer. The two met to discuss Plaintiff's concerns on or about March 28, 2017. Plaintiff was not satisfied with their discussion. Another meeting with Plaintiff, Baltzer, and Plaintiff's direct supervisor,[3] was scheduled to take place on April 4, 2017, but Plaintiff refused to meet because her previous concerns were not adequately addressed. Given what Defendant characterizes as a "months-long" accumulation of performance issues and Plaintiff's failures to collaborate effectively, as well as Plaintiff's refusal to engage to address her concerns, Defendant decided to terminate Plaintiff's employment and did so on April 5, 2017.

The denial of a promotion and Plaintiff's termination form the bases of this suit. Plaintiff, proceeding pro se, alleges these actions violate Title VII and 42 U.S.C. § 198. Defendant moves for summary judgment on each of Plaintiff's claims.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party

---

[3] As explained below, one of the newly promoted Operations Managers became Plaintiff's direct supervisor in March 2017. *See infra*, section III.C.1.

4

is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

The Court notes Plaintiff repeatedly relies on allegations in her complaint to controvert Defendant's statement of facts and to support her statement of additional material facts. A party "cannot simply rely on assertions in the pleadings to survive a motion for summary judgment." *Krein v. DBA Corp.*, 327 F.3d 723, 726 (8th Cir. 2003). Accordingly, the Court cannot consider allegations in the complaint unless Plaintiff cites to admissible evidence in the record establishing those facts.

### III. DISCUSSION
#### A. Title VII Exhaustion

To exhaust administrative remedies entitling a plaintiff to bring a cause of action under Title VII, the plaintiff must "give notice of all claims of discrimination in the administrative complaint." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). A plaintiff can only seek relief "for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* at 631. The administrative complaint must be construed liberally, but a civil suit can be only be as broad "as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Id.* Each discrete

5

discriminatory act, such as a termination, failure to promote, denial or transfer, or refusal to hire, constitutes a separate actionable offense and must be identified in the administrative charge. *Dahdal v. Wells Fargo Fin.*, No. 04-0415CV-W-GAF, 2005 WL 2008648, at *5 (W.D. Mo. Aug. 17, 2005) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Defendant argues Plaintiff failed to exhaust her Title VII wrongful termination claim because her EEOC charge did not identify her termination. Plaintiff's EEOC charge, filed twelve days after her termination, states: "I was employed by the above named employer from on or about April 4, 2016 until on or about April 5, 2017. I believe I was subjected to a difference in terms and conditions of employment and denied a promotion based on my race, bi-racial, color, religion, Muslim, and retaliation in violation of Title VII..." Doc. #44-57. While the charge identifies a failure to promote claim, her termination is not identified. *See Woelbling v. R.C. Wilson Co.*, 966 F. Supp. 858, 862 (E.D. Mo. 1997) (distinguishing denial of a promotion as not similar or reasonably related to discriminatory termination allegations). Even interpreting Plaintiff's charge "with the utmost liberality," the Court finds Plaintiff failed to exhaust her Title VII wrongful termination claim. *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1998). Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's Title VII wrongful termination claim for this reason alone.[4]

B.  Discrimination on basis of religion, race, or color (Counts I – V)

Plaintiff asserts Defendant failed to promote her, in violation of Title VII and 42 U.S.C. § 1981, because of her religion (Count I), race (Counts II & III), and color (Counts IV & V). Defendant argues Plaintiff fails to establish a prima facie case of discrimination on any basis under either statute. To survive a motion for summary

---

[4] Plaintiff attaches a second charge of discrimination to her opposition brief. Doc. #45-14. Filed on March 27, 2018, that charge alleges Defendant retaliated against Plaintiff by giving an unfavorable job reference to a prospective employer. The record does not indicate Plaintiff received a right-to-sue letter for this new charge, and Plaintiff's amended complaint does not include a claim based on refusal to provide references. The allegations in that charge are not before this Court, and the Court has not considered it in deciding the claims alleged in Plaintiff's amended complaint.

judgment, a plaintiff must present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018). The standard for section 1981 claims and Title VII claims is identical. *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014). Plaintiff has not presented direct evidence of discrimination. Accordingly, the Court considers her claims under the *McDonnell Douglas* burden-shifting framework.

To establish a prima facie case of failure to promote, a plaintiff must show she (1) is a member of protected group, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) the circumstances of that adverse employment action give rise to or permit an inference of unlawful discrimination. *See, e.g.*, *Robinson*, 753 F.3d at 754; *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017). Defendant concedes the first three elements, but argues the causation element is not met.

In November 2016, Defendant created four new "Operations Manager" positions, to which Operations Administrators nation-wide would report. Plaintiff applied for the Operations Manager position. After receiving applications, Defendant's Recruiter Zoe Spivak conducted initial screening interviews via telephone with eight applicants, all employees of Defendant at that time. Plaintiff admits, and the Court agrees, Spivak's notes from her calls are positive as to Plaintiff and other candidates.

Spivak's notes were provided to a team made up of Executive Vice President Pat Steiger, incoming Vice President of Operations Rebecca Fehlig,[5] and Phyllis Robsham[6] who would determine which applicants advanced in the hiring process. Fehlig conducted a second screening call with six candidates, Plaintiff included, to determine a final set of candidates who the panel members would interview.[7] Fehlig's notes from

---

[5] Fehlig previously served as President of the Gateway Area Chapter.
[6] Defendant does not provide Robsham's title, but the Court believes she is a senior level executive or similar position.
[7] Based on the Spivak's initial screening calls, two candidates were chosen to immediately move to the final panel interview stage, rather than conduct a second

7

this second screening call with Plaintiff do not reference Plaintiff's religion, race, or color. During her deposition, Plaintiff stated Fehlig's notes "appear to be positive."[8] Following Fehlig's calls, the panel members discussed the eight candidates, and determined Plaintiff, and two others, would not advance to a final interview.

A plaintiff may establish the fourth prong of a failure to promote claim by producing facts demonstrating similarly situated employees, not in the protected class, were treated differently. *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004). Plaintiff argues she establishes causation giving rise to or permitting an inference of unlawful discrimination because she, a Muslim woman with "caramel mocha tan skin," was not selected to advance in the process. She also argues one of the other candidates not selected to advance to a final interview was African American female with dark skin. While another applicant, a Caucasian woman, did not advance, Plaintiff omits that woman from her discussion.

Defendant, supported by an affidavit from Senior Human Resources Director Kimberli Baltzer, shows each selected finalist had more experience, more education, and/or more tenure at Defendant than Plaintiff. When asked to identify an applicant who advanced to a final interview who was less qualified than she, Plaintiff repeatedly stated, "I'm not sure how to answer that question." During the deposition, Plaintiff never identified a candidate who should not have advanced, and repeatedly cited her belief she was qualified for the Operations Manager position. Defendant does not dispute Plaintiff was qualified, but simply being denied a position to which one is qualified does not mean Defendant unlawfully discriminated against Plaintiff due to her religion, race, or color in deciding not to advance Plaintiff to a final interview. *See Torgerson v. City of*

---

screening interview. Spivak described these candidates as "standout" candidates based on their performance to date, initiative, and positive attitudes.

[8] Plaintiff controverts Defendant's factual statement by noting she mentioned "something is off" about Fehlig's notes in her deposition. In fact, Plaintiff repeatedly demurred when questioned about Fehlig's notes. "[S]omething is off" was Plaintiff's answer to a question about the formatting of the document, which appears to be a spreadsheet containing Fehlig's notes printed without grid lines. While the document may be difficult to follow at first, Plaintiff makes no genuine attempt to do so, nor does she answer the questions asked. It is uncontroverted that Fehlig's commentary about her interview with Plaintiff is not negative, and Plaintiff cannot point to any commentary about her religion, race, or color.

*Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011) (stating no inference of discrimination can be made when a plaintiff is only similarly qualified or less qualified than the chosen candidate).

The record indicates the five candidates selected for a final interview panel – Katie Kosseff, Ashley Nicholes, Jared Beck, Crystal Miner, and Lexi Hamill – were hired or extended offers. Doc. #45-12, at 39.[9] In opposing summary judgment, Plaintiff generally argues she was more qualified than other candidates. Plaintiff claims Kosseff only worked for Defendant for five months prior to applying for the position. But Kosseff's resume indicates she was already serving in an "Operations Manager" role for her chapter in which she, among other things, managed facilities in four states. Plaintiff has not shown she is clearly superior to Kosseff. *See Torgerson*, 643 F.3d at 1049 (indicating pretext may be found if a plaintiff's qualifications are "clearly superior" or "significantly better" than the selected applicant's qualifications).

Plaintiff also argues Kosseff's promotion contravened Defendant's policy requiring candidates to be in their current positions for six months before applying for a promotion. However, as Plaintiff notes, the policy permits exceptions by the Executive Vice President of Human Resources or the Regional Human Resources Director to meet business needs. The Operations Manager job description does not require a specified tenure to be considered for the position, and Plaintiff is not permitted to substitute her calculations of tenure, impose additional requirements on Defendant's decision making process, or question whether an exception is appropriate. *See Arnold v. Nursing & Rehab. Ctr. at Good Shephard, LLC,* 471 F.3d 843, 846 (8th Cir. 2006) ("A district court may not second-guess an employer's valid, nondiscriminatory employment decisions.").

Plaintiff argues she had been in her role for longer than four of the candidates who advanced, and therefore, had more "direct on-the-job experience," and should have been chosen for the promotion. Plaintiff overlooks the fact that several finalists had been employed with Defendant for many years. Nicholes started as a Development

---

[9] Although Defendant initially advertised four openings, a decision was later made to create five Operations Manager positions. Kosseff, Nicholes, Beck, Miner, and Hamill accepted the Operations Manager positions.

9

Coordinator in December 2015. Beck worked as an Operations Administrator since March 2011, and was a receptionist starting in February 2010. Although Plaintiff says Miner served as an Operations Administrator for less than six months prior to being promoted, Miner's resume indicates she had been employed since October 1998.

Plaintiff also claims she achieved a higher level or more appropriate education than several candidates. The Operations Manager job description stated the minimum qualification was a BA/BS degree; identified "office administration, human resources, accounting or other business" as preferred educational fields; and stated two additional years of relevant experience could be considered in lieu of a BA/BS degree. Plaintiff has a bachelor's degree in business administration with about a decade of administrative assistant or operations administration experience. Koseff has a bachelor's degree in women's studies with work experience dating back to 2000. In addition to a bachelor's of science, Nicholes has a master of public administration degree, specializing in nonprofit and program management, with work experience starting in 2007. Beck was projected to complete a computer technical school training by 2017, and has work experience dating from 2009, with six of those years with Defendant, and five years as an Operations Administrator. Hamill has a bachelor's degree in fine arts, with administrative experience and multiple roles with Defendant. Miner's resume does not list her education, but her file indicates she has a high school diploma or its equivalent level of education.[10] While Plaintiff has a higher level of education than Miner and Beck, and an arguably more applicable degree than Koseff, Plaintiff does not get to substitute her judgment for that of Defendant's hiring panel. Nor can the Court substitute its judgment. *See Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) (citing maxim that "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.") (citation omitted).

Plaintiff's evidence fails to establish causation. Plaintiff offers little more than speculation and conjecture about the reasons for not advancing in the interview process. Plaintiff does not offer any evidence that prohibited reasons motivated

---

[10] As previously noted, Miner worked for Defendant since October 1998. She had the most tenure of the eight candidates, with approximately a decade more tenure than the second most tenured candidate.

Defendant's decision making, and admits notes from interviews are generally positive about her. Further, Plaintiff does not offer evidence she was clearly superior to any of the candidates selected. Accordingly, she has failed to establish a prima facie case of failure to promote under Title VII and section 1981. For this reason alone, the Court grants summary judgment in Defendant's favor on Counts I through V.

Even if the Court were to find Plaintiff established a prima facie case of failure to promote, the Court finds Defendant established a legitimate, non-discriminatory reason for its decision. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). Defendant established Plaintiff did not advance to a final interview because other applicants had more experience, more education, and/or more tenure. In citing this reason, Defendant articulates a legitimate, non-discriminatory rationale for its decision not to advance Plaintiff to the final interview stage. There is no indication Plaintiff's religion, race, or color played a part in Defendant's decision. For this additional reason, the Court grants Defendant's motion for summary judgment on Counts I through V.[11]

### C. Wrongful Termination

Counts VI and VII are for wrongful termination under Title VII and 42 U.S.C. § 1981. Construing Plaintiff's complaint liberally, the Court considers whether summary judgment is appropriate under a discriminatory discharge theory, and a retaliatory discharge theory. Although the Court previously determined Plaintiff's Title VII wrongful termination claim was not exhausted, the Court will consider whether summary judgment is appropriate if Plaintiff had exhausted that claim.

### 1. Discriminatory Discharge

To establish a prima facie case of discriminatory discharge, Plaintiff must show (1) she is a member of a protected class, (2) she met Defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d

---

[11] To the extent Plaintiff brings a retaliatory failure to promote claim, the claim fails because the Court finds Plaintiff did not engage in protected activity. *See infra*, section III.C.2.

1011, 1019 (8th Cir. 2011) (citation omitted). The required prima facie showing is a "flexible evidentiary standard," and the fourth element may be satisfied in a number of ways, such as showing more-favorable treatment to similarly situated employees, or biased comments by a decision maker. *Id.* (citations omitted). Defendant does not dispute the first or third elements, but argues Plaintiff cannot meet the second element because she was not meeting its legitimate expectations, and cannot establish the fourth element because circumstances surrounding Plaintiff's termination do not give rise to an inference of discrimination.

Plaintiff argues she met Defendant's legitimate expectations, but the record and Plaintiff's belief about the scope of her job duties demonstrate otherwise. Plaintiff had disagreements with several co-workers about the scope of her duties. These disagreements include, but are not limited to, problems with Volunteer Engagement Coordinator Leanne Mersmann related to recruiting and assignment of volunteers, problems with Senior Manager of Participant Engagement Erica Kiehnhoff and Vice President for Community Engagement & Services Susan Engel related to Bike MS events,[12] and a dispute during Bike MS packet pick-up with Development Manager Jenn Melling and Special Events Coordinator Kelly Rasor in which Plaintiff refused to assist with correcting Bike MS registration errors.[13]

---

[12] Preparations for Bike MS occurred in August and September 2016. Mersmann and Engel grew frustrated with Plaintiff's inability to take full responsibility for organizing registrations and rider packets at events around the Midwest, tasks she was previously assigned and were within her job duties. Emails show Plaintiff complained of being busy, but she also refused to do more to assist. Plaintiff disputes Defendant's facts by citing two emails from Luger, who trained Plaintiff months earlier. In the first email, Luger alludes generally to Luger "doing too much" for Defendant. The second email is Luger's farewell email, in which she advises colleagues to "be gentle with [Plaintiff] as there might be some things that we have not covered or just barely touched on!" Luger's emails do not relate to Bike MS issues, and do not show Plaintiff was meeting her employer's expectations.

[13] Plaintiff was asked to update four "rider numbers" or bib numbers during packet pick-up the night before. Emails show Plaintiff refused this request. Plaintiff alleges she was "verbally assault[ed]" by Rasor during packet pickup, but presents no admissible evidence to support that allegation. To the extent Plaintiff says no investigation into the incident was conducted, Plaintiff presents no evidence she reported the incident to human resources or a supervisor. Finally, there is no allegation, much less admissible

In September 2016, Plaintiff requested a meeting with Baltzer to discuss the Operations Administrator role. Baltzer's notes show, among other things, Plaintiff was concerned about the volume of work assigned to her, felt some tasks were not within her job description, felt a lack of support from staff, lacked volunteer support, and complained about having to manage the front desk. Doc. #44-31. Baltzer's notes indicate Plaintiff believed the Operations Administrator position was posted as a manager or director position, but Baltzer, citing the job description, explained it was not that type of role. During her deposition, Plaintiff was asked if Baltzer's notes omitted any concerns discussed during that meeting. Plaintiff repeatedly evaded the subject, and could not identify any concerns missing from Baltzer's notes.

Defendant also had problems with Plaintiff's management of office space. In November 2016, without permission, Plaintiff relocated her office to another area where she believed it would be easier for her to work on an ongoing project.[14] In February 2017, Plaintiff approved an office move for employee Robin Slater, and emailed Slater and Neher regarding the move. Neher explained Plaintiff did not have authority to approve an office move, and Neher was continuing to evaluate office placements in light of a recent reorganization. Apparently unhappy with this explanation, which she believed contravened her job description, Plaintiff emailed Baltzer complaining Neher did not provide assistance in finding solutions to office space issues, and did not support Plaintiff generally. While the record lacks evidence of a response to Plaintiff's November 2016 unilateral office move, Neher's February 2017 email indicates frustration with Plaintiff attempting to make decisions and take actions beyond the scope of her job duties.

Events in March 2017 further demonstrate Plaintiff was not meeting Defendant's expectations. First, Neher and Plaintiff discussed Defendant's expectations for Plaintiff's role. Neher's notes, which were emailed to Baltzer, indicate Plaintiff felt her role had changed and was not what she expected. She also felt a lack of support, and

---

evidence, that the incident involved a comment or other action towards Plaintiff's religion, race, or color.

[14] Plaintiff asserts Neher only took issue with this move because the move placed Plaintiff closer to her colleagues and within "eye shot" of the front door, but Plaintiff fails to cite admissible evidence to support this assertion.

13

without a strong team to help her. Neher acknowledged Plaintiff feeling "challenged by me and my supervision and feedback," but stressed she wanted to support Plaintiff.[15] Approximately one week later, Plaintiff sent an email attempting to recruit volunteers for the Walk MS, despite repeatedly being told this task was not within her job duties. That communication prompted Plaintiff's new supervisor, Operations Manager Lexi Hamill, to email Plaintiff outlining Defendant's expectations for Plaintiff, the principle issue of which was Plaintiff's continued and unauthorized attempts to recruit volunteers, and clarifying what Plaintiff should or should not do regarding volunteers. Hamill's email concluded with reference to a potential performance improvement plan if Plaintiff continued to struggle with Defendant's expectations.

Plaintiff responded to Hamill's email, carbon copying Neher, Baltzer, Steiger, Fehlig, and others, disputing what she believed her responsibilities were regarding volunteers, and again stating her belief that her role had changed. A few days later, Baltzer and Hamill conducted phone calls with Plaintiff, but achieved no resolution to the issues Plaintiff raised. During her call with Hamill, Plaintiff refused to relocate her office closer to the front desk reception area, directing Hamill to the Operations Administrator job description and Plaintiff's belief about the scope of her duties. On April 4, 2017, Plaintiff refused to meet with Hamill and Baltzer because she was busy preparing for an event, and her previous questions had not been answered. Even when told the meeting was set to address her concerns and she needed to work with Defendant on those concerns, Plaintiff refused to meet. Plaintiff's employment with Defendant was terminated the next day.

The Eighth Circuit holds the second element of a prima facie retaliation claim – whether plaintiff met defendant's legitimate expectations – is satisfied if, setting aside the employer's discharge rationale, a plaintiff demonstrates he or she was otherwise meeting expectations or otherwise qualified. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010); *see also Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir.

---

[15] Plaintiff attempts to dispute Neher's characterization of the conversation, but presents no admissible evidence contradicting Neher's narrative. Plaintiff's statement that she "believes some of the statements made within [the notes] are false" does not controvert Defendant's factual statement, which is supported by admissible evidence.

2006) (considering, without deciding, whether a plaintiff's second step of proof requires a less onerous showing of "qualified for the job" or "more (seemingly) onerous burden" of proving the plaintiff met the employer's "legitimate expectations."). Given the repeated problems Plaintiff and Defendant experienced, Defendant's expectations when it hired Plaintiff were not met. Various employees, including Plaintiff's direct supervisors, repeatedly had difficulty getting Plaintiff to perform tasks required by her position and asked of her by other employees.

Plaintiff emphasizes she was not placed on a performance improvement plan, and received no formal performance review. Although true, the record demonstrates Plaintiff continually resisted corrective guidance, and ultimately refused to engage with supervisors and human resources employees when asked to discuss her concerns. That Plaintiff surreptitiously recorded two conversations with superiors strongly suggests she suspected her time with Defendant may be running short. *See Rooney*, 878 F.3d at 1118 n.6 (noting two surreptitiously recorded conversations would be unusual behavior if one did not believe his or her position in jeopardy). The Court finds Plaintiff cannot show she was meeting Defendant's legitimate expectations. *See Riser*, 458 F.3d at 820 (advising courts to "see the forest through the trees" when analyzing a plaintiff's burden on the second element of a prima facie retaliation claim).

Even if the Court found Plaintiff met the "less onerous standard" that she was "qualified for the job," Plaintiff cannot establish a prima facie case of discrimination because Plaintiff fails to identify circumstances that give rise to an inference of discrimination. Plaintiff cites no racially charged language from any co-workers, nor is there a hint of religious animosity in the record. To the extent Plaintiff generally claims the work environment was intimidating or threatening, she does not identify any circumstances or behavior with specificity. Plaintiff claims a Caucasian woman was hired to replace her, but the record does not show the woman's qualifications or experience.[16] Thus, Plaintiff fails to establish causation. *Rooney*, 878 F.3d at 1119; *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 520–21 (8th Cir. 2011).

---

[16] Plaintiff also argues the new job advertisement posted after her termination includes volunteer duties she was told not to perform. The decision and ability to refine duties of the Operations Administrator rests solely within Defendant's discretion, and the mere

Although the Court found Defendant was entitled to summary judgment because Plaintiff failed to exhaust her Title VII wrongful termination claim, the Court additionally finds summary judgment is appropriate on Plaintiff's wrongful termination claims under Title VII and section 1981 because Plaintiff cannot establish a prima facie case of wrongful termination.[17] Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's discriminatory discharge claims.

### 2. Retaliatory Discharge

To establish a prima facie retaliation case, Plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between her protected activity and the adverse employment action. *Box v. Principi,* 442 F.3d 692, 696 (8th Cir. 2006). "Protected conduct is defined by federal law, which prohibits a[ ] [defendant] from discriminating against an employee who has opposed any practice made unlawful by Title VII, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the statute." *Davis v. Jefferson Hosp. Ass'n,* 685 F.3d 675, 684 (8th Cir. 2012). "An employee must show that the employer had actual or constructive knowledge of the protected activity in order to establish unlawful retaliation." *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (citing *Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 715 (8th Cir. 2000)).

Although Plaintiff claims she engaged in protected activity by lodging complaints about Neher, her comments do not rise to protected activity. General complaints, such as not feeling supported, not feeling like part of a team, feeling alone, made to feel small, or not feeling empowered and valued, are insufficient to qualify as protected activity. *See Shirrell v. St. Francis Med. Ctr.*, 24 F. Supp. 3d 851, 863 (E.D. Mo. 2014)

---

alteration of the role, even when considered with the hiring of a Caucasian woman to replace Plaintiff, does not suggest Plaintiff was discriminated against.

[17] As with Plaintiff's failure to promote claims, her discriminatory discharge claims fail even if she could establish a prima facie case. Defendant established a legitimate, nondiscriminatory reason for Plaintiff's termination. And Plaintiff fails to set forth any evidence that Defendant's reasons are pretextual. *Macias Soto v. Core-Mark Int'l, Inc.*, 521 F.3d 837, 841 (8th Cir. 2008) (describing burden shifting regime).

(finding "vague, unsupported complaint" does not qualify as protected activity). These complaints, particularly when made without reference to a protected criterion, do not identify unlawful employment practices. To the extent Plaintiff complained once about Neher's request to access a form in a personnel file, which Plaintiff denied due to her belief the request was improper, Plaintiff's complaint is not premised on unlawful or even a suspicion of improper motives by Neher. Plaintiff was provided an explanation of Neher's request and who should have access to personnel files, but steadfastly maintained Neher's request was impermissible in light of all evidence to the contrary. To the extent Plaintiff complained about feeling segregated by her office location, intimidated, or pressured, Plaintiff's complaints were general in nature, and failed to involve allegations that could be construed as potential violations of prohibited employment practices. Thus, these complaints do not constitute protected activity. Further, after searching the voluminous record, the Court finds no complaints lodged by Plaintiff that are premised on unlawful practices under Title VII.

Although Plaintiff's complaints at work do not constitute protected activity, Defendant concedes Plaintiff engaged in protected activity when she completed an EEOC intake questionnaire on April 3, 2017, two days before her termination. However, Plaintiff fails to establish a causal connection between that filing and her termination. The undisputed fact is Defendant was not notified of Plaintiff's intake questionnaire until April 18, 2017, after Plaintiff was discharged. Only when Defendant received a letter from the EEOC, which the EEOC admitted was not sent within ten days as statutorily required due to an administrative oversight, was it aware of Plaintiff's protected activity. This lack of knowledge precludes Plaintiff's claim of retaliation. *See Hervey*, 527 F.3d at 722 (stating an employer must have actual or constructive knowledge of a protected complaint to demonstrate retaliation).

Plaintiff alleges another employee told human resources of her intake questionnaire after Plaintiff confided in that employee. But that employee denied informing human resources when questioned by Plaintiff via text message immediately after Plaintiff's termination. Plaintiff's sheer speculation, which contradicts the text message conversation provided to the Court, does not establish a prima facie case. *See Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) (a

nonmoving party has not properly addressed an assertion when he offers "unreasonable inferences or sheer speculation as fact"). The Court grants summary judgment on Plaintiff's retaliatory discharge claim because she fails to establish she engaged in protected activity other than her EEOC intake questionnaire, and fails to show a causal connection between the intake questionnaire and Defendant's decision to discharge her.[18]

IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.[19]

IT IS SO ORDERED.

DATE: July 10, 2018

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[18] As with Plaintiff's failure to promote and discriminatory discharge claims, her retaliatory discharge claim fails even if she could establish a prima facie case. Defendant has established a legitimate, nondiscriminatory reason for Plaintiff's termination. And Plaintiff fails to set forth any evidence that Defendant's reasons are pretextual.

[19] On June 25, 2018, after Defendant's motion was fully briefed, Plaintiff filed "Plaintiff's reply in opposition" to Defendant's reply brief. Doc. #48. Plaintiff's filing is construed as a sur-reply, which she did not seek leave to file. See L. R. 7.0 (indicating motion practice consists of supporting suggestions, opposing suggestions, and reply suggestions); L. R. 56.1 (summary judgment briefing does not permit a sur-reply as a matter of course). The Court reviewed the filing, but did not consider it in ruling the pending motion. To the extent the Court would have considered Plaintiff's sur-reply, the Court would have reached the same outcome.